Anthony Ray JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–96–803–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 10, 1998.

Opinion Overruling Rehearing Jan. 7, 1999.

---

Charles Freeman, Houston, for appellant.

Eric Kugler, Houston, for appellee.

Before Justices ANDERSON,
EDELMAN, and SEARS.*

## OPINION

JOHN S. ANDERSON, Justice.

Anthony Ray Johnson (appellant) appeals his conviction of aggravated robbery. After finding appellant guilty, the jury assessed his punishment at seventy-five years confinement in the Texas Department of Criminal Justice with a $10,000.00 fine.

On appeal, appellant asserts four points of error. In his first two points of error, appellant complains that the appellate record is incomplete. His third and fourth points of error assert that his trial lawyer failed to render effective assistance of counsel during both the guilt/innocence and punishment phases of trial. We affirm.

* The Honorable Ross A. Sears, Senior Justice, sitting by assignment.

On the night of March 31, 1994, four Rice University students were on a double date. At the end of the evening, the students, Sarah Stafford, David Marolf, Lauren Johnson, and Doug Tapley, were in a parking lot in Marolf's car. As they were getting out of the car, two men, appellant and another man, approached the car carrying guns. They told the students to get back in the car. Appellant got in the back seat with Stafford and Marlof, and the other man got in the front seat with Johnson and Tapley, the driver. Appellant gave Tapley directions to an ATM.

Although the robbers directed Tapley to a few ATMs, none of the students provided an ATM card. The robbers stated that they knew that the students had ATM cards because they were rich Rice students. After the unsuccessful attempt to get cash, the robbers took the students to an isolated parking lot. The appellant and the other man ordered everyone out of the car and lined them up facing a cinder block wall. The robbers then commanded the students to remove their clothing. Next, the robbers demanded that they hand over all of their jewelry. While appellant searched the car, the other robber put his gun to each student's head, *seriatim*, told them that they would be killed, and warned them not to turn around.

While all the students were completely naked, the robbers ordered them to turn around and face them. Appellant and his companion walked a short distance away and talked for a minute. They then grabbed Stafford, put her in the car, and drove away. Marolf ran towards the departing car, but could not catch it.

Appellant was driving the car, and the other man was in the back seat with Stafford. After a few minutes of driving, the second male put a gun to Stafford's head and sexually assaulted her. Appellant then pulled the car over, got into the back seat with Stafford, and sexually assaulted her while the other man held a gun to her head. Shortly thereafter, the second male assaulted her again,

and when he had finished he used a blanket that was in the car to clean its interior. He then pushed Stafford onto the floor, told her not to move or he would kill her, and walked away with the other man.

## Incomplete Appellate Record

In points of error one and two, appellant complains that the appellate record is incomplete. Specifically, the trial court's final charge on punishment is missing. However, on September 24, 1997, this Court allowed the State to supplement the appellate record with the charge. Because we now have the supplemental record, appellant's first two points of error are moot. *See Caldwell v. State*, 875 S.W.2d 7, 8 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd); *Bell v. State*, 938 S.W.2d 35, 47 (Tex.Crim.App.1996).

## Ineffective Assistance of Counsel— Guilt/Innocence Phase

In point of error three, appellant asserts his defense counsel failed to render effective assistance at trial. In order to establish a claim for ineffective assistance of counsel during the guilt/innocence phase of trial, the defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Perrett v. State*, 871 S.W.2d 838, 840 (Tex.App.—Houston [14th Dist.] 1994, no pet.) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Crim.App. 1986). A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. *See Miniel v. State*, 831 S.W.2d 310, 323 (Tex.Crim.App.1992).

■ Judicial scrutiny of counsel's performance must be highly deferential. *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. A reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *See id.* Counsel's performance must be judged by the totality of the representation. *See Chatham v. State*, 889 S.W.2d 345, 349 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). An ineffectiveness claim cannot be demonstrated by isolating one portion of counsel's representation. *See McFarland v. State*, 845 S.W.2d 824, 843 (Tex.Crim.App.1992). Under the *Strickland* test, the defendant bears the burden of proving ineffective assistance of counsel. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994). Contentions of ineffectiveness must be proved by the accused by a preponderance of the evidence. *See Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex.Crim.App.1993).

■ Following *Strickland*, we must first determine, for each instance of ineffective assistance cited by appellant, whether defense counsel's performance was deficient before we reach the prejudice prong of the *Strickland* test. Appellant asserts defense counsel's performance was deficient on three separate occasions. First, appellant contends that defense counsel's failure to object to the prosecutor's remark during closing argument concerning appellant's failure to testify was deficient performance. The unobjected to statement was "Ladies and gentlemen, that is not—there were no examples of contested facts up there." The Court of Criminal Appeals in *Angel v. State*, 627 S.W.2d 424 (Tex.Crim.App.1982) held that in order to constitute a comment on the defendant's failure to testify, the "language must be more than an implied or indirect allusion to defendant's silence." *Id.* at 426. The statement here which appellant refers to as constituting a comment on the defendant's failure to testify has been taken out of context. Looking at the record as a whole, as required by *Denison v. State*, 651 S.W.2d 754, 761 (Tex.Crim.App.1983), it is evident that the prosecutor's comment related to the consistency in the testimony of the four State's witnesses. Indeed, the record in this case reflects that the prosecutor's statement was in direct response to defense counsel's argument that the testimony of the State's

witnesses was inconsistent.[1]

■ To be proper, jury argument must fall within one of the following four categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *See Todd v. State*, 598 S.W.2d 286, 296–97 (Tex.Crim.App. 1980). In making this statement, the prosecutor was responding to defense counsel's argument that the testimony of the State's witnesses was not consistent. Thus, this argument was not a comment by the State regarding the defendant's failure to testify, but rather a response to the earlier argument of defense counsel. As such, it was permissible jury argument to which an objection was not warranted. An attorney's failure to object to proper argument cannot be ineffective assistance. *See Richards v. State*, 912 S.W.2d 374, 379 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd). Accordingly, defense counsel was not deficient in his performance in this instance, and we do not reach the prejudice prong of the analysis.

■ Second, appellant contends defense counsel's performance at trial was deficient because he failed to object when the State bolstered the credibility of its witnesses using unsworn testimony in closing argument. The general rule is that in the closing argument the State may not bolster the credibility of its witnesses with unsworn testimony. *See Puckett v. State*, 168 Tex.Crim. 615, 330 S.W.2d 465, 465 (Tex.Crim.App.1959). However, if the State's argument falls within any of the four categories enumerated in *Todd*, it is permissible jury argument.

■ In its closing argument here the State said:

The testimony that you heard and that you have to judge your decision on was consistent. It was truthful. It did not vary. That is something that you have to look at. That is part of your job. Look at the consistency of the testimony. Was it credible or not? Absolutely it was credible. For three individuals to come in here and tell you remarkable similar stories of something that happened to them.

This Court in *Richards v. State* was also faced with an ineffective assistance claim on appeal based, in part, on counsel's failure to object, during closing argument, when the prosecutor vouched for the credibility of the complainant, Bernard Phearse. *See* 912 S.W.2d at 378. The statement in that case was: "You see, the only person who testified completely truthfully in my opinion in this case and did not make a single mistake was Bernard Phearse. He is the only person in my opinion." *Id.* at 379. This Court held that because the statement could have reasonably been derived from witness Phearse's testimony before the jury, the argument was proper inasmuch as it was both a deduction from, and a summation of, that evidence. *Id.* at 380.

Further, in *Smith v. State* the court held that the State is permitted to answer appellant's challenge to the credibility of the State's witnesses by contending that appellant's testimony was not truthful. *See* 898 S.W.2d 838, 845 (Tex.Crim.App.1995). The obvious corollary to *Smith* appears in *Wylie v. State* where the appellant asserted ineffective assistance of counsel for counsel's failure to object to the jury argument in which the prosecutor attempted to uphold the credibility of the complainant. *See* 908 S.W.2d 307, 310 (Tex.App.—San Antonio 1995, pet. ref'd). The defense strategy in *Wylie* was to attack

---

1. The responsive nature of the State's comment emerges when the arguments of defense counsel and the prosecutor are compared. The State waived the right to make the first closing argument to the jury, allowing appellant to proceed first. In that argument, defense counsel stated the following: "Y'all sat through several days of testimony, testimony from this chair [witness stand]. During that time, we've heard many witnesses come up and tell you about an event that occurred on March 31, 1994. No one in this courtroom, in this courthouse in Houston, Texas will dispute the facts that a very bad incident occurred to four students. *But what we have seen and what we have heard come from that chair is, at best, contradicting testimony."* (emphasis added). Just a few moments after these comments, the prosecutor responded as follows: "Ladies and gentlemen, that [testimony of the victims] is not—there were no examples of contested facts up there. The testimony that you heard and that you have to judge your decision on was consistent. It was truthful. It did not vary. That's something you have to look at. That's part of your job. Look at the consistency of the testimony."

the complainant's credibility by suggesting that she was prone to lie. *See id.* The *Wylie* court held that the prosecutor's arguments upholding the credibility of the complainant were in response to earlier, contrary arguments by the defense. *Id.* Thus, because the prosecutor's argument was within permissible limits, the court held it was not ineffective assistance for trial counsel to forego an objection. *Id.*

Here, as in *Richards,* the prosecutor's argument constituted both a summation of, and a deduction from, the testimony heard by the jury from the State's witnesses. Further, as in *Wylie,* the prosecutor's statements here also constituted a response to defense counsel's argument that the testimony of the State's witnesses was inconsistent. Because the State's argument falls within three of the four permissible categories of proper jury argument, an objection was improper. Appellant's counsel's performance, therefore, satisfied the first prong of the *Strickland* test and no further inquiry is required.

■ Appellant next argues that defense counsel at trial was deficient in not objecting to a reference to the aggravated kidnaping and aggravated sexual assault in the State's closing argument. However, this also was proper jury argument because it was a summation of the evidence, thus vitiating the need for an objection. *See Todd,* 598 S.W.2d at 296. At trial, the victim testified about being kidnaped and sexually assaulted by the appellant. Therefore, it was proper for the State to summarize her testimony in its closing argument. *See Harris v. State,* 784 S.W.2d 5, 12 (Tex.Crim.App.1989).

We hold defense counsel was, during the guilt / innocence phase of trial, performing within the range of reasonable professional assistance. Therefore, because appellant was not denied his Sixth Amendment right to effective assistance of counsel for his defense, we need not address the prejudice prong of *Strickland.* Point of error three is overruled.

### Ineffective Assistance of Counsel— Punishment Phase

In his fourth point of error, appellant argues that his trial attorney rendered ineffec-

tive assistance at the punishment phase of trial. In support of this point of error, appellant cites counsel's failure to object to (a) victim impact testimony from David Marolf and the complainant, and (b) a punishment recommendation from appellant's mother.

■ The right to counsel, during the punishment phase of a trial, has been interpreted to mean the right to reasonably effective assistance of counsel. *See Ex parte Duffy,* 607 S.W.2d 507, 514 (Tex.Crim.App. 1980). The right to counsel does not mean errorless counsel or counsel whose competency or adequacy of representation is to be judged by hindsight. *See Mercado v. State,* 615 S.W.2d 225, 228 (Tex.Crim.App.1981). Under *Ex parte Duffy,* the court must determine whether (1) counsel was reasonably likely to render effective assistance, and (2) counsel reasonably rendered effective assistance. *See* 607 S.W.2d at 514, n. 14; *Craig v. State,* 825 S.W.2d 128, 130 (Tex.Crim.App. 1992). There is no requirement, however, that a defendant show prejudice, *i.e.,* that but for counsel's performance the outcome of the proceeding would have been different, as is required under the second prong of *Strickland. See Vaughn v. State,* 931 S.W.2d 564, 566 (Tex.Crim.App.1996).

■ A reviewing court will not second guess, through appellate hindsight, tactical decisions made by trial counsel. *See Harvey v. State,* 681 S.W.2d 646, 648 (Tex.App.— Houston [14th Dist.] 1984, pet. ref'd). The sufficiency of an attorney's assistance is measured by the totality of the representation of the accused. *See Ex parte Cruz,* 739 S.W.2d 53, 58 (Tex.Crim.App.1987). Allegations of ineffective assistance of counsel must be clearly demonstrated in the record. *See McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996).

### *Failure to Object to Victim Impact Evidence*

■ Appellant contends his counsel rendered ineffective assistance at the punishment stage of the trial because counsel failed to object to the introduction of evidence on two occasions. Appellant first argues that the testimony of David Marolf, relating to the impact of the crime on him, was not

relevant. The Texas Code of Criminal Procedure provides, in part, as follows: "Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to ... *the circumstances of the offense for which he is being tried....* " TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.1996)(emphasis added).[2]

Mr. Marolf testified on redirect at the punishment phase that he had to spend a great deal of time with the complainant giving her emotional support, that he had withdrawn from his friends, that the incident caused him to end his relationship with the complainant, and the incident was the most significant event that had ever happened in his life. At the end of his redirect testimony, Mr. Marolf stated, "I will always think about this. Maybe not everyday. I know this will always be in my mind."

Mr. Marolf was the boyfriend of the complainant, and he was present during, and a victim of, the aggravated robbery. In *Killebrew v. State,* the victim of an aggravated assault was permitted to testify at the punishment phase of trial. *See* 746 S.W.2d 245, 247–248 (Tex.App.—Texarkana 1987, pet. ref'd). The victim testified that she was afraid to be home alone or drive alone, that she often got nervous, and that she thought about the crime every day. *Id.* at 247. The court held that the trial court did not err in allowing such testimony inasmuch as the offense was aggravated assault, the testimony was from the victim who was on the stand and subject to cross-examination, and the testimony related to the nature and circumstances of the crime. *Id.* at 248. The court further held that the facts related by the victim as to the impact of the crime on her were legitimate considerations in assessing

punishment where the crime is a violent assault on a person. *See id.*

Just as in *Killebrew,* Mr. Marolf, a victim of the robbery, was on the witness stand and subject to cross-examination, and his testimony related to the *circumstances* of the crime. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a). The victim impact testimony of Mr. Marolf was virtually identical to the testimony offered by the victim in *Killebrew.* We agree with the analysis in *Killebrew* and find it applicable here.

Further, in *Miller–El v. State,* the State offered testimony of a physician at the punishment stage establishing that the victim had been rendered a paraplegic as a result of the attempted murder and describing the future hardships expected for the victim as a result of his disability. *See* 782 S.W.2d 892, 894 (Tex.Crim.App.1990). The Court of Criminal Appeals held the physician's testimony admissible at the punishment phase of the trial as a "circumstance of the offense." *Id.* at 897. Accordingly, we hold that David Marolf's testimony as to the impact of the crime on him was a circumstance of the offense, and thus admissible as a legitimate consideration, pursuant to article 37.07, § 3(a), for the jury in assessing punishment. Appellant's counsel was not ineffective for failing to object to admissible evidence.

■ Appellant's second assertion that his counsel provided ineffective assistance at the punishment phase stems from his failure to object to the relevance of the complainant's testimony as to the effect of the incident on a member of her family. Specifically, the complainant stated that her father was in counseling for over a year as a direct result of the trauma she had suffered. Appellant asserts on appeal that such evidence was not relevant.

Texas Rule of Evidence 401 defines relevant evidence to mean "evidence having any

---

**2.** Unless otherwise indicated, citations to the Code of Criminal Procedure are to the Code in effect at the time of appellant's trial in June 1996. The Legislature amended article 37.07, section 3(a) in 1993 to include the language authorizing the admission of evidence regarding the circumstances of the offense at the punishment phase. The inclusion of such language in the statute validated the court's prior holding in

*Miller–El v. State* where testimony concerning the future impact of the crime on the victim was held admissible at the punishment phase as a circumstance of the offense. *See* 782 S.W.2d 892, 895 (Tex.Crim.App.1990); *see also Moore v. State,* 868 S.W.2d 787, 790 (Tex.Crim.App.1993)(holding court must assume that Legislature was aware of prior decisions when it amended the statute).

tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R. EVID. 401. The admissibility of evidence during the punishment phase of a non-capital felony offense is not a question of logical relevance but that of policy because there are no discreet factual issues at the punishment stage. *See Miller–El*, 782 S.W.2d at 895–896 (footnote omitted). The Legislature, however, has not set a coherent policy to guide courts in discerning what evidence is appropriate to the punishment deliberation. *Id.* at 896. Moving to fill that policy void, the Court in *Miller–El* declared that, subject to limitations imposed by Code of Criminal Procedure article 37.07, § 3(a), evidence of the circumstances of the offense itself or the defendant himself will be admissible at the punishment phase. *See id.* (citing *Murphy v. State*, 777 S.W.2d 44, 63 (Tex. Crim.App.1988) (Plurality opinion on State's motion for rehearing)). A defendant's moral culpability, arising from the jury's guilty verdict, encompasses the results of the crime actually intended as well as those which should have been anticipated under the circumstances. *See id.* at 897. In either event, the defendant is "blameworthy". *See id.* It is appropriate, therefore, to allow the sentencing jury to consider the full extent of the damage done, even including future pain and suffering. *See id.*

In *Stavinoha v. State,* the Court of Criminal Appeals examined the admissibility at the punishment phase of testimony from a psychologist concerning the aggravated sexual assault's psychological aftereffects on the child complainant *and* on his mother. 808 S.W.2d 76, 77–78 (Tex.Crim.App.1991). The Court held the evidence admissible. *See id.* at 79. In reaching that conclusion, the Court accepted that a jury could rationally hold appellant morally accountable for the psychological trauma to both complainant and his mother, and for the consequences of that trauma. *See id.* The Court also noted that the defendant, a Catholic priest, could have easily anticipated the impact his betrayal of trust would have on both mother and child. *See id.* The Court concluded that because such evidence had a bearing on the defen-

dant's personal responsibility and his moral guilt, it was admissible. *See id.*

Here, the jury found appellant guilty of aggravated robbery of the complainant and also heard that immediately following the charged offense she was kidnaped and sexually assaulted by appellant. The impact of this violent crime on the immediate family of the complainant, a college student, should have been anticipated by appellant as a natural consequence of the terror he inflicted on complainant during the course of the robbery and subsequent sexual assaults. Evidence of the psychological impact of appellant's crime on complainant's father did not exceed appellant's moral culpability determined by the jury's guilty verdict. Because we believe a jury could hold appellant morally accountable for the psychological trauma to complainant and her father, we hold evidence of that impact is admissible as having a bearing on appellant's personal responsibility and moral guilt. Accordingly, inasmuch as appellant's counsel properly refrained from objecting to admissible evidence at the punishment stage, his performance at the two points complained of by appellant was not ineffective.

*Failure to Object to Punishment Recommendation*

Appellant next argues that defense counsel's assistance during the punishment phase of trial was ineffective because he did not object to the prosecution's cross-examination of defendant's mother regarding punishment. Appellant is correct in stating that, in general, a witness may not recommend to the trier of fact a particular punishment. *See Sattiewhite v. State,* 786 S.W.2d 271, 290 (Tex.Crim.App.1989); *Wright v. State,* 962 S.W.2d 661, 663 (Tex.App.—Fort Worth 1998, no pet. h.). However, it is apparent that defense counsel at the punishment phase was mindful of this as he objected before the witness could answer the State's question asking for a punishment recommendation.

The State then asked leading hypothetical questions regarding punishment in its cross-examination of the defendant's mother. It appears that these questions were in response to questions asked by defense counsel on direct examination of defen-

dant's mother regarding her ability to assist appellant if probation were granted. Appellant has not cited, and we have not found, any authority establishing that these hypothetical questions by the State were improper. However, even if we accept appellant's contention that counsel should have made a second objection, we nevertheless must overrule appellant's conclusion that his counsel was ineffective. When we review a claim of ineffective assistance of counsel, counsel's competence is presumed. *See Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). A defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *See id.* A fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *See Miniel v. State*, 831 S.W.2d 310, 323 (Tex.Crim.App.1992). The fact that another attorney, including appellant's counsel on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *See Hawkins v. State*, 660 S.W.2d 65, 75 (Tex.Crim.App.1983). In our system of criminal justice an individual is entitled to a fair, but not a perfect, trial. *See Ewing v. State*, 549 S.W.2d 392, 395 (Tex.Crim.App.1977). Isolated failures to object to improper evidence do not constitute ineffective assistance of counsel. *See Wenzy v. State*, 855 S.W.2d 52, 53 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). The sufficiency of an attorney's assistance is gauged by the totality of the representation of the accused. *See Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex.Crim.App.1987). The appropriate examination of the record includes counsel's representation during pretrial, the guilt-innocence stage of the trial, and the punishment stage. *Rodd v. State*, 886 S.W.2d 381, 384 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).

At trial, defense counsel filed seven pre-trial motions, including a motion for community supervision. During guilt-innocence, counsel vigorously cross-examined and re-cross-examined all but one of the State's witnesses. He called two witnesses, the defendant's mother and father, at the punishment stage. Viewing the totality of appellant's representation at trial, appellant's counsel was functioning within the wide range of reasonable professional assistance. Moreover, the record here is silent as to why appellant's counsel failed to make a second objection to the State's cross-examination of Mrs. Johnson. To hold counsel's inaction constituted ineffective assistance would require us to engage in speculation as to the basis for counsel's inaction. When the record contains no evidence of the reasoning behind trial counsel's actions, we cannot conclude counsel's performance was deficient. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994). Indeed, under *Strickland*, we must presume that counsel's actions might be considered sound trial strategy, and a silent record fails to rebut that presumption. *See id.*

### Failure to Object to Improper Jury Argument

Lastly, appellant asserts that defense counsel failed to render effective assistance at the punishment stage when he did not object to the State's jury argument. Appellant contends that the State's argument asked the jury to place themselves in the shoes of the victim. We agree that it is improper for a prosecutor to ask members of the jury to place themselves in the shoes of the victim, but we disagree that such an argument was made here.

The relevant portion of the argument is as follows:

> Ladies and gentlemen, I'm just asking you for justice. I'm just asking you to think. If there was a camera—if there was a video camera out there, you close your eyes. You go back there and sit for two or three minutes or one minute and don't talk to each other. Close your eyes and you think about what happened. Because if there was a videotape of what happened out there, you would go back there and you would come back here in

five minutes and you would say life and $10, 000.00.

You go back there and close you eyes for two or three minutes and you explain to yourself as you're watching what happened go through your own mind and you try to imagine what those people suffered through, you tell yourself what is the appropriate punishment for that. And your answer is going to be life and ten thousand simply because it is the most that you can do.

 Proper jury argument may consist of a summation of the evidence, a reasonable deduction from the evidence, an answer to the jury argument of opposing counsel, and a plea for law enforcement. *See Brandley v. State*, 691 S.W.2d 699, 712 (Tex.Crim. App.1985). The argument must be considered in light of the record as a whole, and to constitute reversible error, the argument must be shown to be extreme or manifestly improper, to be violative of a mandatory statute, or to have injected new facts, harmful to the accused, into the trial proceedings. *See id.*

In *Linder v. State,* the court found that the prosecutor's argument was not improper. *See* 828 S.W.2d 290, 303 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). In that case, the argument was: "Can you imagine what it's like to know that someone has gone into your home ... Imagine what it's like and what kind of person it takes to go back and pick up an innocent defenseless woman whose son is sleeping right next to her ... Can you imagine what it was like to be that woman?" *Id.* The argument focused on the actions of the defendant and the experience described by the victim and did not focus on the jurors themselves. *See id.* The court held that because each detail in the argument was supported by the evidence, this was a summation. *See id.*

 Similarly in this case, the prosecutor was summing up the evidence. He stated that he wanted them to go to the jury room

and play the evidence back in their minds as if it were on videotape. The prosecution's argument was for them to close their eyes and imagine the evidence, not for the jury to place themselves in the victims shoes. The prosecution did not call for each juror to imagine they had been robbed, kidnapped and sexually assaulted by the defendant. That the prosecutor's argument here was a proper summation is demonstrated when it is contrasted with the improper argument in *Boyington v. State,* 738 S.W.2d 704 (Tex. App.—Houston [1st Dist.] 1985, no pet.). In *Boyington,* the State directly and explicitly called for the jury to punish the defendant as if he had actually attacked them and their families, and that was improper.[3] *See id.*

Because the State in the case before us was simply summarizing and urging the jury to imagine the evidence in their minds, the jury argument was not improper and defense counsel's assistance was not ineffective. Moreover, appellant has not brought forward any evidence to support his contentions that counsel was ineffective. Thus, we simply cannot say that Johnson has met his burden on appeal of demonstrating his counsel was ineffective. Therefore, we overrule point of error four.

We affirm the judgment of the trial court.

### OPINION ON APPELLANT'S MOTION FOR REHEARING

After the opinion was issued in this case, appellant filed a motion for rehearing asserting that we had failed to address his complaint, raised in his initial brief and in his post-submission argument, that trial counsel was ineffective for failing to object to certain testimony based on hearsay during the punishment phase of the trial. Specifically, appellant asserts that his counsel was ineffective for not interposing such an objection as the complainant, when asked about the impact of the crime on her family, responded that "[m]y dad was in counseling for over a year."

 The test for determining whether counsel rendered ineffective assistance of

---

**3.** In *Boyington,* the prosecutor's argument included the following comments: "So please put yourself in that place when you are deciding this. Put yourself in the place of that Anderson family and imagine that was your family that was fire-

bombed in the middle of the night. Imagine that it was your son that had his legs on fire. Imagine that it was your home that was burned out." *See* 738 S.W.2d. at 709.

counsel at the punishment phase of a noncapital trial is that adopted by the Texas Court of Criminal Appeals in *Ex Parte Duffy,* 607 S.W.2d 507 (Tex.Crim.App.1980). In order to successfully argue on appeal that his trial counsel's failure to object to evidence as hearsay constituted ineffective assistance of counsel, appellant must show that the trial judge would have committed error in overruling such an objection. *See Vaughn v. State,* 931 S.W.2d 564, 566 (Tex.Crim.App. 1996). Appellant has made no such showing in any of his submissions to this Court.

 Texas Rule of Evidence 801(d) provides that " 'Hearsay' is a *statement,* other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." (emphasis added). Rule 801(a) defines "statement" as "(1) an oral or written verbal expression or (2) nonverbal conduct of a person, if it is intended by the person as a substitute for verbal expression." Reading these two rules together, it is manifest that conduct which is not intended as a substitute for verbal expression is not hearsay. *Cf. Rodriguez v. State,* 903 S.W.2d 405, 411 (Tex. App.—Texarkana 1995, pet. ref'd) (silence of a person when questioned by police officer is not hearsay where the record does not show, and context of the silence does not permit an assumption, that failure to speak was intended as a substitute for verbal expression). Here, appellant has not cited, and we have not found, any evidence in the record indicating that the complainant's father intended to communicate anything by his act of seeking medical assistance. We conclude this is nonassertive, nonverbal conduct. Where conduct, such as that described by the complainant, was not intended as an assertion or a

substitute for a verbal expression, that conduct is not a *statement* as defined in Rule 801(a). *See* 2 STEVEN GOODE ET AL., TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 801.2 (2d ed.1993).[1]

Inasmuch as the complainant's testimony regarding her father's conduct was not hearsay, the trial court would not have erred in overruling an objection based on hearsay. Thus, appellant's counsel was providing effective assistance when he correctly refrained from making a groundless hearsay objection during the punishment phase of the trial. Accordingly, we overrule appellant's third argument supporting his contention on appeal that he received ineffective assistance of counsel during the punishment phase, and we overrule appellant's motion for rehearing.

---

**1.** That the complainant's father's conduct was not intended as a substitute for verbal expression, and therefore not hearsay, can be demonstrated by comparing his nonassertive, nonverbal conduct to the nonverbal conduct intended as an assertion exhibited in *Graham v. State,* 643 S.W.2d 920 (Tex.Crim.App.1981), *op. on. reh'g,* 643 S.W.2d at 925 (1983). In *Graham,* the shooting victim, while in a hospital for wounds received from the appellant, was visited by a police officer. *Id.* at 926. Even though the victim was unable to speak, she could make gestures with her hands. *Id.* The officer showed her several photographs and asked her to identify the individual who shot her. *Id.* at 927. When shown appellant's photograph, she made a shooting motion with her hand, and the officer testified to her conduct over objection by appellant's counsel that the description of the victim's actions constituted hearsay. *Id.* at 926. Finding that the testimony was only significant as indicating the victim's belief that appellant was the individual who shot her, the Court of Criminal Appeals reversed the conviction holding that "[s]uch conduct was assertive in nature and testimony concerning that conduct was hearsay." *Id.*