**AFFIRMED; Opinion Filed June 30, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01339-CR

### ELIJAH  FINLEY, Appellant

### V.

### THE STATE OF TEXAS, Appellee

### On Appeal from the 194th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F11-56527-M

## MEMORANDUM OPINION
Before Justices FitzGerald, Lang, and Fillmore
Opinion by Justice Lang

The sole issue in this appeal from a jury conviction and forty-year sentence for aggravated robbery is whether the circumstantial evidence linking Elijah Finley to the robbery is sufficient to support the conviction. We conclude it is and affirm the trial court's judgment.

### I. FACTUAL AND PROCEDURAL CONTEXT

The robbery occurred at a clothing store in the late morning of August 31, 2006. John Korpal, Korpal's co-worker, and at least four other individuals were in the store when four African-American males, armed with guns, entered the store and demanded Korpal and the others lower their heads and lie face down on the floor. The robbers searched all individuals in the store. Then, they directed Korpal and the others to move to the back of the store. There, the robbers tied each of their hands with "white clear colored" zip ties that were "about 12 to 18

inches long." One of the robbers also tried to tie Korpal's legs together, but was unable to do so. The robbers left moments later, taking with them Korpal's wallet, cell phone, pager, and voltage tester, as well as property from the others.

Finley was apprehended by police within hours of the robbery based on evidence found during an unrelated investigation. However, neither Korpal nor any of the other victims was able to identify Finley from a photographic line-up as one of the robbers. Finley was released. He was arrested five years later after testing revealed his DNA on a zip tie recovered from the store immediately after the robbery.

A three-day trial was held in September 2012. Korpal testified about the robbery and that he called 9-1-1 after someone in the store untied his hands. After the police arrived, he gave an oral statement to an officer and subsequently gave a written statement. Although not included in his written statement, Korpal testified he was able to see out of the corner of his eye the face of the robber who tried to tie his legs and noticed that this robber was shorter than the other robbers. When he saw Finley in court immediately before trial began, he recognized Finley as that robber and told the State's investigator. Korpal admitted he was unable to identify Finley from the photographic line-up he was shown following the robbery, and so stated in his written statement, but testified he would have been able to identify Finley from a live line-up. He admitted he was told the State had DNA evidence linking Finley to the robbery, but denied that knowledge led him to identify Finley as one of the four robbers.

Korpal's testimony was corroborated in large part by his co-worker, Martin Solc. Solc testified further that he was the one who cut Korpal's ties. Solc explained he was able to cut his ties with scissors he found on a table at the back of the store, and once he cut his ties, he helped Korpal.

Dallas police officer Melissa Gregg testified she was dispatched to investigate an alleged drug house on the afternoon of August 31, 2006. Several African-American males, including Finley, were standing outside the house when she arrived. As she approached the group, she smelled what she thought was marijuana coming from a trash can on the side of the house. Gregg looked inside the trash can and found several "I.D.s, credit cards of Caucasian[s]," later identified as the victims of the store robbery. Finding Finley and others standing outside the house to have outstanding warrants, she arrested those men.

Jeffrey Chavers testified he regularly sold drugs at the house Gregg investigated. He was at the house when Gregg arrived and had been there for about thirty minutes. Chavers testified that he noticed "a whole bunch of boxes of shoes and clothes" when he walked into the house. He asked Finley, who was already there, about the boxes, and Finley replied that "[t]hey had just hit a lick" at a store. Chavers testified he was arrested that day along with Finley, but later released. Chavers testified he agreed to cooperate with the State in exchange for a twenty-year sentence in an unrelated capital murder case. He admitted that at the time of the murder he was on probation for aggravated assault with a weapon. On cross-examination, he admitted he and Finley were formerly friends.

Angela Fitzwater, the State's last witness, tested swabbings from the zip ties recovered at the store following the robbery. She testified that a partial DNA profile obtained from one of the zip ties matched Finley's DNA profile with a probability of 1 in 3.97 billion and the DNA profile obtained from a second zip tie matched Finley's DNA profile with a probability of 1 in 18.7 billion. On cross-examination, Fitzwater admitted she had no knowledge when "any of this DNA was placed on any of the items" or "under what circumstanced it was placed." She agreed that "just because DNA is on an item, that does not mean that the DNA was placed on that item where the item was found."

Finley did not testify and did not call any witnesses.

## II. SUFFICIENCY OF THE EVIDENCE

In arguing the evidence is legally insufficient, Finley does not dispute the aggravated robbery occurred. Instead, he contends the State presented no credible evidence connecting him to the robbery. Specifically, he contends that although his DNA was found on two zip-ties recovered from the scene, no evidence showed when and under what circumstances his DNA was placed on the zip ties. Additionally, he contends neither Korpal's nor Chavers's testimony was credible. Finley argues Chavers was not credible because his testimony was self-serving. He argues Korpal's testimony was not credible because (1) his written statement reflected he was unable to identify any of the robbers, yet six years later he was able to identify Finley in court; (2) his testimony was untruthful at times; and (3) he was unable to identify Solc, his co-worker, as the one who untied his hands.

### A. Standard of Review

The legal sufficiency standard of review is well known. In evaluating the sufficiency of the evidence to support a conviction, a reviewing court considers all the evidence in the light most favorable to the trial court's judgment to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Under this standard, direct and circumstantial evidence cases are treated equally, and circumstantial evidence alone can be sufficient to establish guilt. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 13, (Tex. Crim. App. 2007)). Because the fact finder is the sole judge of the witnesses' credibility and the weight to be given the evidence, the reviewing court defers to the trier of fact's resolution of any conflicts in testimony, weight of the evidence, and

inferences drawn. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *Hooper*, 214 S.W.3d at 13 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

## B. Applicable Law

The State must prove beyond a reasonable doubt that the accused is the person who committed the offense charged. *See Miller v. State*, 667 S.W.2d 773, 775 (Tex. Crim. App. 1984); *Wiggins v. State*, 255 S.W.3d 766, 771 (Tex. App.-–Texarkana 2008, no pet.). No formalized procedure is required, and the State can meet its burden by presenting either direct or circumstantial evidence, including DNA evidence. *See Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009); *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.-–Austin 2006, pet. denied).

## C. Application of Law to Facts

The evidence here connecting Finley to the robbery includes Korpal's in-court identification of Finley, Finley's presence at the drug house where Korpal's and the other victims' credit cards and identifications were found, Finley's admission to Chavers's that "[t]hey had just hit a lick" at a store, and Finley's DNA on two of the zip ties recovered at the store following the robbery. Viewing this evidence under the light most favorable to the verdict, we conclude the jury could have found beyond a reasonable doubt that Finley was one of the robbers. *See*, *e.g.*, *Phelps v. State*, 594 S.W.2d 434, 436 (Tex. Crim. App. 1980) [Panel Op.] ("The mere possibility that a defendant's fingerprints might have been left at a time other than the time of the burglary does not necessarily render the evidence insufficient."); *Welch v. State*, 993 S.W.2d 690, 694 (Tex. App.-–San Antonio 1999, no pet.) (in-court identification of appellant supported conviction even though witness unable to identify appellant prior to trial); *Short v. State*, 995 S.W.2d 948, 952 (Tex. App.-–Fort Worth 1999, pet. ref'd) (evidence sufficient to support conviction despite witness's felony conviction and inconsistent testimony);

*Allen v. State*, 899 S.W.2d 296, 299-300 (Tex. App.-–Houston [14th Dist.] 1995) (evidence that officers found crossbows, two arrows, a photograph showing money spread out on a bed, a "Radio Shack" bank bag, and bandana's in appellant's apartment sufficient to show appellant robbed Radio Shack employee using crossbow), *pet. dism'd, improvidently granted*, 945 S.W.2d 829 (Tex. Crim. App. 1997).

Although Finley complains about Korpal's and Chavers's credibility and the conclusiveness of the DNA evidence, assessment of the witnesses' credibility and weight to give the evidence was for the jury. *See Hooper*, 214 S.W.3d at 13. The jury heard questions at trial attacking the reliability of the DNA evidence and the credibility of Korpal and Chavers, and, by returning a verdict of guilty, necessarily accepted, at least in part, the evidence and testimony. We will not disturb that finding. *See Umstead v. State*, ___ S.W.3d ____, 2014 WL 358368 *4 (Tex. App.-–Eastland 2014, pet. ref'd) (rejecting appellant's argument that his identification as the murderer by three witnesses was not credible because credibility was issue for jury to decide and jury chose to accept, at least in part, witnesses' testimony); *Zuniga v. State*, 393 S.W.3d 404, 413 n.2 (Tex. App.-–San Antonio 2012, pet ref'd) (rejecting appellant's argument that witness's testimony showing appellant committed murder was "divorced from reality" and deferring to jury's determination of witness credibility and weight of evidence). We resolve Finley's sole issue against him.

### III. CONCLUSION

We affirm the trial court's judgment.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
121339F.U05

–6–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ELIJAH ZAVIER FINLEY, Appellant

No. 05-12-01339-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F11-56527-M.
Opinion delivered by Justice Lang.   Justices FitzGerald and Fillmore participating.

Based on the Court's opinion of this date, we **AFFIRM** the trial court's judgment.

Judgment entered this 30th day of June, 2014.